2011 Ark. App. 671

**CNA INSURANCE COMPANY
and Milam Construction,
Appellants**

v.

**ARKANSAS CHILDREN'S
HOSPITAL, Appellee.**

**No. CA 10–1136.**

Court of Appeals of Arkansas.

Nov. 9, 2011.

Lee Joseph Muldrow and Gary D. Marts, Jr., Little Rock, for appellant.

Betty J. Hardy, Little Rock, for appellee.

LARRY D. VAUGHT, Chief Judge.

At issue in this appeal is the interpretation of Arkansas Workers' Compensation Rule 30, which establishes the schedules of maximum allowable fees for medical services rendered to injured employees. The dispute concerns a medical bill (that exceeds $4 million dollars) submitted for reimbursement by appellee Arkansas Children's Hospital (Children's) to appellant CNA Insurance Company (CNA). The parties disagree about when Rule 30's 150% multiplier for reimbursement for extraordinary services applies to the Inpatient Hospital Fee Schedule. Children's interpretation of Rule 30 results in full reimbursement of its bill, while CNA's interpretation results in the reduction of Children's bill in excess of $880,000. The Arkansas Workers' Compensation Commission found in favor of Children's, ordering CNA to reimburse Children's the full amount of its medical bill. On appeal, CNA argues that the Commission's interpretation of Rule 30 is contrary to the General Assembly's stated intent of containing workers' compensation medical costs and should be reversed. We disagree and affirm.

The issue before us is one of statutory and rule interpretation. We review issues of statutory and rule construction de novo, as it is for us to decide what a statute means. *Stromwall v. Van Hoose,* 371 Ark. 267, 272, 265 S.W.3d 93, 98 (2007); *Lewis v. Auto Parts & Tire Co.,* 104 Ark.App.

230, 232–33, 290 S.W.3d 37, 39 (2008). Arkansas Code Annotated section 11–9–704(c)(3) (Repl.2002) requires that we construe workers'-compensation statutes strictly. Strict construction requires that nothing be taken as intended that is not clearly expressed, and its doctrine is to use the plain meaning of the language employed. *Lewis,* 104 Ark.App. at 233, 290 S.W.3d at 40. The basic rule of statutory construction, to which all other interpretive guides must yield, is to give effect to the intent of the legislature. *Id.,* 290 S.W.3d at 40. When a statute is clear, however, it is given its plain meaning, and the appellate court will not search for legislative intent; rather, that intent must be gathered from the plain meaning of the language used. *Id.,* 290 S.W.3d at 40. A statute is ambiguous only where it is open to two or more constructions, or where it is of such obscure or doubtful meaning that reasonable minds might disagree or be uncertain as to its meaning. *Id.,* 290 S.W.3d at 40. In considering the meaning of a statute, we construe it just as it reads, giving the words their ordinary and usually accepted meaning in common language. *Id.,* 290 S.W.3d at 40. The statute should be construed so that no word is left void, superfluous, or insignificant; and meaning and effect must be given to every word in the statute if possible. *Id.,* 290 S.W.3d at 40.

There are few disputed facts in this case. On November 13, 2007, the claimant Michael Driggers was seriously injured when he fell into saltwater that was 200 hundred degrees Fahrenheit. He was admitted to Children's, the only certified burn-treatment facility in Arkansas. He survived, but he suffered severe burns to sixty percent of his body and had multiple system failures during his 200 hundred-day stay that began on November 13, 2007, and ended on May 31, 2008. Children's final bill for Driggers's care was $4,112,753.10. Driggers's claim was accepted as compensable by CNA, but it only paid medical expenses totaling $3,226,503.34 (leaving an unpaid balance of $886,249.76), claiming that was all it was required to pay under Rule 30.

Workers' Compensation Rule 30 is titled the "Medical Cost Containment Program." It was promulgated pursuant to Arkansas Code Annotated section 11–9–517.[1] While broad in its scope, relevant to this case Rule 30 establishes schedules of maximum fees a health facility or health-care provider can charge for reasonable and necessary medical treatment for employees who are injured arising out of and in the course of their employment, and it establishes the procedures by which a health-care provider shall be paid. Rule 30(I)(A)(1)(b), (c).

In addition to Rule 30, the Commission promulgated the applicable fee schedule in this case—the Inpatient Hospital Fee Schedule (IHFS).[2] Within the IHFS, there are two steps or "methods" for calculating medical-care-provider reimbursements. The first is the per diem method (PDM) of payment, which in most workers' compensation cases is the total amount of reimbursement a medical-care provider or facility would receive. The parties agree that the PDM is the first calculation to be made and that the allowable charge under the PDM is $267,600.[3]

1. Specifically, section 11–9–517 provides that the Workers' Compensation Commission is authorized to establish rules and regulations, including schedules of maximum allowable fees for specified medical services rendered with respect to compensable injuries, for the purpose of controlling the cost of medical and hospital services and supplies. Ark.Code Ann. § 11–9–517 (Supp.2001).

2. The parties agree that the IHFS applies in this case.

3. The PDM is calculated by multiplying the injured employee's hospital-admission length

The second step for calculating reimbursement within the IHFS is the stop-loss method (SLM) of payment. The SLM is defined as "an independent reimbursement factor established to ensure fair and reasonable compensation to the hospital for unusually costly services rendered during treatment to an injured worker." Inpatient Hospital Fee Schedule (II)(C).[4] The parties also agree that the SLM applies to the instant case.

The controversy herein arises from a provision of Rule 30, separate from the IHFS, that governs reimbursement to medical providers "when extraordinary services resulting from severe head injuries, major burns, and severe neurologic injuries or any injury requiring an extended period of intensive care are required."

Rule 30(I)(I)(3). In such cases, "a greater fee may be allowed up to 150% of the fee schedule." *Id.* The parties do not dispute that Children's rendered extraordinary services to Driggers and that the 150% multiplier applies. The issue is whether the 150% multiplier is applied before or after the SLM calculation is made, which requires a determination of whether the SLM is part of the IHFS or independent thereof.

[5]The position of Children's is that within the IHFS there are two required calculations (the PDM and SLM) and that the 150% multiplier is to be applied to the aggregate figure that results from adding the PDM and SLM. Under this interpretation of Rule 30, CNA would be required to pay the full amount of Children's medical bill.[5] CNA argues that Children's inter-

of stay by the standard per diem amount (which is based on the size of the hospital). In this case, it is undisputed that Children's per diem amount is $1338. Thus, the PDM is $1338 × 200 = $267,600.

4. To be eligible for SLM reimbursement, the total allowed charges for a hospital admission must exceed the hospital maximum payment by $10,000. Inpatient Hospital Fee Schedule

(II)(C)(1)(a). Once the allowed charges reach the stop-loss threshold, reimbursement under the SLM for all additional charges shall be made based on a stop-loss payment factor of 80%. Inpatient Hospital Fee Schedule (II)(C)(1)(c). For the total allowable charges under the IHFS, the SLM is added to the maximum allowed payment (PDM). Inpatient Hospital Fee Schedule (II)(C)(1)(d).

5. To illustrate:

| $ 1,338.00 | per diem |
| x 200.00 | length of stay |
| $ 267,600.00 | PDM reimbursement amount |

| $4,112,753.10 | Children's total charges |
| - 267,600.00 | PDM reimbursement amount |
| $3,845,153.10 | difference between total charges and PDM reimbursement amount |

| $3,845,153.10 | difference between total charges and PDM reimbursement amount |
| - 10,000.00 | stop-loss threshold |
| $3,835,153.10 | stop-loss |

| $3,835,153.10 | stop-loss |
| x .80 | stop-loss factor |
| $3,068,122.40 | SLM reimbursement amount |

| $3,068,122.40 | SLM reimbursement amount |
| + 267,600.00 | PDM reimbursement amount |
| $3,335,722.40 | Inpatient Hospital Fee Schedule total reimbursement allowance |

| $3,335,722.40 | Inpatient Hospital Fee Schedule total reimbursement allowance |
| x 1.5 | 150% multiplier for extraordinary services |
| $5,003,583.60 | Total reimbursement |

However, Rule 30 provides that "[r]eim-   bursement for health care services shall be

pretation violates the stated legislative intent of Rule 30—to contain medical costs. CNA further argues that the SLM is a method of payment distinct from the IHFS and that the 150% multiplier should not be applied to the aggregate of the PDM and SLM, but only to the PDM. Once that calculation has been made, the SLM is calculated. According to CNA, Children's is entitled to reimbursement of $3,226,503.34,[6] which it argues greatly increases Children's standard reimbursement but also contains medical costs per the Arkansas General Assembly's intent.

At the administrative level, Children's sought an opinion from the Commission's Administrator of the Medical Cost Containment Division (MCCD), who issued an administrative review order in favor of Children's and found that CNA was liable to Children's for the full amount of its bill.[7] CNA appealed the administrative review order to the administrative law judge (ALJ). Following a hearing, the ALJ issued an opinion in favor of Children's finding that the IHFS should be determined by calculating both the PDM and the SLM, and then applying the 150% multiplier for extraordinary services to the sum of the PDM and SLM. The ALJ further found that there was nothing in the plain reading of Rule 30 that supported CNA's argument that the 150% multiplier should be applied to the PDM before the PDM and SLM were added. Finally, the ALJ dismissed CNA's public-policy argument, finding that the drafters contemplated situations where a health-care provider or facility would receive full reimbursement of its bill instead of the maximum amount allowed under Rule 30.

CNA appealed the ALJ's decision to the Commission, which in a unanimous decision, affirmed and adopted the opinion of the ALJ adding,

> [W]e acknowledge [CNA's] argument that in certain claims with extraordinary services the present application of Rule [30] and the [Inpatient] Hospital Fee Schedule may not comport with the stated intent of A.C.A. § 11-9-517 to control the cost of medical and hospital services and supplies and may require public comments and amending in the future. Nevertheless for those reasons aptly set forth in the Administrative Law Judge's opinion we find that Medical Cost Containment Division's interpretation and application of the [Inpatient] Hospital Fee Schedule and Rule [30] is correct. The Stop-Loss [Method], while independent of the [PDM] calculation, is part of the [Inpatient] Hospital Fee Schedule and must be applied prior to the 150% enhancement for extraordinary services as permitted by Rule 30. The Medical Cost Containment Division's opinion is not contrary to the Medical Fee Schedule or Rule [30].

As it did below, CNA argues on appeal that it is the stated intent of Rule 30 to contain workers' compensation medical costs. Because the Commission's interpretation of Rule 30 in this case requires CNA to pay the full amount of Children's bill,

---

the lesser of (a) the provider's usual charge, or (b) the maximum fee calculated according to the AWCC Official Fee Schedule ..., or (c) the MCO/PPO contracted price, where applicable." Rule 30(I)(A)(1)(c) and Rule 30(I)(I)(1). Because 150% of the IHFS is more than Children's total billed services of $4,112,753.10, Children's is due the lesser amount, which is the full amount of its bill.

6. CNA does not illustrate its calculations. Despite our efforts, we have been unable to break down CNA's figures using the methodology it argues on appeal.

7. CNA requested that the MCCD administrator reconsider the administrative order, and on September 25, 2009, the administrator issued its denial of the request for reconsideration.

CNA argues that it does not contain costs, it violates the legislative intent of the rule, and therefore is erroneous and must be reversed. We disagree.

The plain language of Rule 30 does not support CNA's theory that the 150% multiplier should be applied to the PDM before the SLM is added, midway through the IHFS calculation. A plain reading of Rule 30's IHFS establishes that it includes two methods of payment—the PDM and the SLM, which are two steps that are added together to arrive at the "fee schedule," i.e., the IHFS. The examples provided in the rule confirm this position.[8] Further, in the separate provision of Rule 30 that allows for the 150% multiplier, it plainly states that "a greater fee may be allowed up to 150% of the *fee schedule*." (Emphasis added.) We hold that in this case, the total reimbursement allowed under the fee schedule (IHFS) is determined by first performing the PDM calculation and then the SLM calculation. Those figures are added together for the total reimbursement allowed under the IHFS. The 150% multiplier is applied to the total IHFS allowance.

We note CNA's concession that the Commission's, and now our, interpretation of Rule 30 is "textually plausible." It argues, however, that it is "thoroughly implausible when the legislative intent is considered." We agree with CNA that the legislative intent behind Rule 30 is to contain workers'-compensation medical costs.

However, neither the Act nor its rules and regulations provide that every workers'-compensation medical cost must be contained. On the contrary, Rule 30 was written with two exceptions where medical-care providers are to receive more than the standard workers'-compensation-reimbursement amounts. Inpatient Hospital Fee Schedule (III)(C) (providing for the SLM of payment for inpatient hospital stays for unusually costly services rendered to an injured worker); Rule 30(I)(I)(3) (providing for a greater fee up to 150% of the fee schedule). Also, the drafters of Rule 30 contemplated circumstances where medical providers would be paid the full amount of their bills as evidenced by language in the rule that a health-care provider shall be paid the lesser of the provider's usual charge, the maximum fee established under this rule, or the MCO/PPO contracted price. Rule 30(I)(A)(1)(c) and Rule 30(I)(I)(1).

While there is no question that the stated purpose of Rule 30 is to contain workers'-compensation medical costs, the plain language of the rule does not require that every medical bill for an inpatient hospital admission must be reduced. This workers'-compensation case, involving over $4 million dollars in medical expenses, is clearly a rare circumstance.[9] Under our de novo review, we uphold the Commission's interpretation of Rule 30 because it is supported by the plain language of the rule and does not violate public policy.

---

8. CNA argues that, because Rule 30 defines the "stop-loss payment" as an "independent method of payment for an unusually costly or lengthy stay," the SLM is not part of the IHFS. The plain language of the IHFS clearly establishes that the SLM is a method of payment included in the IHFS. Within the IHFS, the SLM is a method of payment that is separate from, but added to, the PDM. CNA's constrained interpretation of Rule 30 requires us to not only take out the plain language about the SLM found in the IHFS, but also insert language into the IHFS about the 150% multiplier, neither of which we can do.

9. Children's does not typically receive full reimbursement on its workers'-compensation bills. The evidence established that less than one percent of Children's total charges are generated from the treatment of workers'-compensation burn patients and that typically Children's is reimbursed approximately sixty-five percent of those bills.

Accordingly, we affirm the Commission's finding that Children's is entitled to full reimbursement for the extraordinary medical services it rendered to Driggers.

Affirmed.

GLADWIN and MARTIN, JJ., agree.